The opinion of the Court was drawn up by
Appleton, C. J.
ByR. S., 1857, c. 6, § 1, it is enacted that "a poll tax shall "be assessed upon every male inhabitant of this State above the age of twenty-one years, whether a-citizen of the United States or. an alien, in the manner provided by law, unless he is exempted therefrom" by the provisions of this chapter.”
By § 10, "all personal property, within or without this State, except in the cases enumerated in the following section, shall be assessed to the owner in the town, where he is an inhabitant on the first day of April in each year.” Neither the plaintiff nor his property are within the exemptions nor the exceptions of the statute.
By these provisions it is iinmistakeably apparent that it was the legislative intention that every male inhabitant of this State, and that all personal property within the same, with certain exceptions not affecting this case, should be taxed. No person is to be exempt. No one should be. No property is exempt. None should be. The payment of taxes is the price paid for the protection which government gives to person and to property. The State affords security to all persons. It protects all property. The burden of maintaining government should be co-extensive with the benefits conferred.
The statute assumes that every inhabitant of the State is an inhabitant of some place therein. Every inhabitant, by the statutory definition of the word, has ■ an " established residence” somewhere. R. S., 1857, c. 1, § 2. If this be not so, then one might be an inhabitant and not within.the exception, and yet not liable to taxation, which would be against the plain and clear language of the statute. Assuming, therefore, that all the male inhabitants of the State, *477 not specially exempted, are to be taxed somewhere, the question arises, where was the plaintiff to be taxed?
To determine this, it remains to ascertain where he was an inhabitant — where had he a domicil. "Domicil,” says Phillimore in his Law of Domicil, p. 13, is "a residence at a particular place, accompanied with positive or presumptive proof of an intention to remain there for an unlimited time.” "Every one at birth receives a domicil of origin, which adheres till another is acquired; and so throughout life, each successive domicil can only be lost by the acquisition of a new one.” Westlake’s Private International Law, 33. While in transitu the old one remains. It continues till a new one is acquired, facto et animo. The Roman law was otherwise. Siquis domicilio relicto naviget vél iter facial, quaerens quo se conferet atque ubi constituat, hunc puto sine domicilio esse. Dig., 50, 1, 27, 2. But such is not our law. The old domicil continues till the acquisition of the new one. Story’s Conflict of Laws, § 48.
The plaintiff has a domicil somewhere. He is to be deemed an inhabitant of some place. He was in itinere. He was not an inhabitant of Oldtown, to which he was going, for the fact of personal presence was wanting. He was not an inhabitant of Bangor, for the intention to be. one, which is an indispensable requirement, did not co-exisf with the fact of his personal presence. The old domicil was not lost, for the new one was not gained. He was rightly taxed in the defendant town. Bulkely v. Williamston, 3 Gray, 493. Were it otherwise, one might evade taxation, which would be a meanness, abhorrent to every honorable and honest mind. It would be to enjoy the benefits and shirk the burdens of government.
The counsel for the plaintiff, in his very able argument, has called our attention to certain decisions of this Court in relation to the settlement of paupers as applicable to the present inquiry.
Before considering and examining the cases to which we have been referred, it may b,e observed that the purpose and *478 object of the statutes relating to taxes and to paupers and the language in' which they are respectively embodied, are entirely different. When a pauper gains a settlement, it is by having "his home in' a town five successive years, without receiving directly or indirectly, supplies as a pauper.” E. S., 1857, c. 24, § 1. One becomes an inhabitant, one acquires a domicil', by the residence Of a day, if to this the requisite intention be superadded.
In considering the decisions under the statute relating to paupers, it should- be further remembered that neither the word "domicil”'nor "inhabitant” is to be found therein, and the opinion of the Court in each case is made to depend upon the peculiar language of the act under consideration. Tu Exeter v. Brighton, 15 Maine, 58, Weston, C. J., says, "if he (the pauper) abandons his former residence with an intention not to return, but to fix his home elsewhere, while in the transit to his new and it may be distant destination, ■we are of opinion that whatever may. be said of his domicil, his home has ceased at .his former residence, within the meaning of the statute for the relief of the poor."
In Jefferson v. Washington, 19 Maine, 293, Whitman, C. J., uses the following language : — "The counsel for the defendant in error, in his argument, treats the words dwelling place and home as if synonymous with domicil, and proceeds to argue that pne domicil continues till another is gained, and that to have a domicil a man need not have any particular place of dwelling or for his home; and he cites numerous authorities to support his position. But the answer to all is, that domicil, though in familiar language used very properly to signify a man’s dwellinghouse, has in certain cases arising under international law and in kindred cases thereto, a sort of technical meaning. And the authorities cited all apply to it in this sense. It fixes the character of. the individual in reference to certain rights, duties and obligations ; but dwelling place and home have a more limited, precise and local application.” In Warren v. Thomaston, 43 Maine, 406, Rice, J., in dejivering the opinion of the *479 Court, says: — "In the discussions in our books upon the pauper law the term domicil is frequently used. The term is not found in the statute, but has been interpolated upon it by .the Court. Its introduction has at times, it is feared, tended to confuse and mislead rather than to simplify and aid in the trial of this class of cases. In its ordinary sense, as used by legal writers, it has not the same restricted meaning as the words residence, dwelling place and home have in the statute under consideration. The meaning of words and the purport of language must ever have reference to the purposes for which they are used, and the subject matter to which they refer.” Exceptions overruled.
Cutting, Davis, Kent and Walton, JJ., concurred.